# HALL v. HALL.

In construing a will, effect is to be given to every part of it, if it may be done without contravening any principle of law, and no part is to be rejected which indicates the intention of the testator.

A testator devised to the demandant " all lots of land lying southerly of Bridge street and westerly of Pleasant street, except lot No. 17." Lot No. 17 lay southerly of Bridge street but easterly of Pleasant street. *Held*, that all the land lying southerly of Bridge street, of which land lot No. 17 was a part, was included in the devise.

Where a testator uses the same form of expression in relation to different tracts of land, he is to be regarded as having the same intention as to both tracts.

A testator devised to the demandant, " all lots of land lying southerly of Bridge street and westerly of Pleasant street, except lot No. 17." *Held*, that as it was shown to be the intention of the testator to devise all the lots of land, which lie southerly of Bridge street, by his reference to lot No. 17, he must be considered as having the same intention in relation to Pleasant street, and as meaning to include all lots of land which lay westerly of Pleasant street, that the descriptive words were to be taken distributively, and that the demandant was not confined to a tract of land which should lie both southerly of Bridge street and westerly of Pleasant street.

WRIT OF ENTRY, to recover possession of a tract of land in Manchester.

On the 21st day of December, 1847, John Hall made his will, by which, with other bequests, he gave to his wife, Elizabeth, the use of one third part of his house, and certain other privileges, to hold during her life, in satisfaction of her dower, with remainder to his son, Henry C. Hall, the tenant.

He gave to his two grand-children, who were the children of Lycurgus Sherman, a tract of land in Manchester, containing about half an acre, known as lot numbered 17, " bounded east on Hall street, north on High street, west on lot No. 16, and south on lot No. 6."

He gave to his son, Stephen C. Hall, the demandant, land described as follows : " All that part of my homestead farm situate in said Manchester, and all lots of land which lie southerly of Bridge street and westerly of Pleasant street,

Hall *v.* Hall.

except lot No. 17, above named." Also, one undivided third part of the buildings, and one undivided half of all his wood and timber land.

He gave to his son, Henry C. Hall, the tenant, one third part of the buildings, one undivided half of the wood and timber land, and also " all the residue of my home farm lying north of Bridge street, east of Pleasant street and the Amoskeag Manufacturing Company's land," and also the reversion of the land devised to the testator's wife, Elizabeth.

The demandant contends that by the will he takes in severalty, all that portion of his father's farm mentioned in the will which lies south of Bridge street, (running and lying both east and west of Pleasant street,) and all that part which is west of Pleasant street, (running and lying both north and south of Bridge street.)

The tenant contends that the demandant takes in severalty by the will only that portion of John Hall's homestead farm which lies south of Bridge street and west of Pleasant street; and not that part which lies south of Bridge street and east of Pleasant street, nor that part which lies west of Pleasant street and north of Bridge street.

Upon the accompanying plan are pointed out the tracts claimed by the parties respectively, and such lots as are necessary to be numbered in order to understand the will.

It was agreed by the parties that if the construction given to the will by the demandant were right, judgment should be entered for him ; otherwise there should be judgment for the tenant.

Hall *v.* Hall.

The dotted line includes the land devised to the demandant by the tenant's construction of the will.

The line marked thus – – – – includes the land devised, by the demandant's construction.

*George W. Morrison,* for the plaintiff.

This case depends on the construction of the will of John Hall, late of Manchester, deceased.

In the construction of wills, it appears to be well settled that the intention of the testator is the first and great object of inquiry, and to this object technical rules are to a certain extent made subservient. The intention of the testator, to be collected from the whole will, is to govern. 4 Kent. Com. 534; 1 Jarman on Wills, 315–328. In order to ascertain the intent, we should consider: First, the terms of the particular bequest, in their natural and legal signification. Second, other parts of the will. Third, the subject matter. *James* v. *Buttrick,* 1 Met. 480; *Martin* v. *Perry,* 1 Met. 446. The intention must be gathered from the whole will, and if the particular intent cannot be ascertained, the general intent will prevail. U. S. Dig. 737–8. Effect should be given to all the words, if it can be done by reasonable construction, consistently with the manifest intent of the testator. U. S. Dig. 737.

We contend that the testator devised to the plaintiff all that part of his homestead farm and lots of land which lies south of Bridge street, and all which lies west of Pleasant street except lot No. 17; and that such is a fair and natural construction of the will.

If there is doubt in relation to the above construction, we apprehend, when the whole will is considered, there can be no doubt of the intention of the testator. The will excepts lot No. 17, which would not be included in the bequest to the plaintiff, if any other construction prevails.

He also bequeaths to the defendant all the rest and residue of his home farm, with such a description as, in connection with other parts of the will, renders it perfectly obvious that he intended to give to the plaintiff all the land lying south of Bridge street except lot No. 17, and all the land west of Pleasant street.

*D. & D. J. Clark,* for the defendant.

This is a question of intention. What piece or pieces of land did the testator, John Hall, design to convey or devise to his son, Stephen C. Hall, by the will under consideration?

The intention of the testator must be carried into effect, if it can be done consistently with the rules of law. *Sedgwick,* J. *Richardson & a.* v. *Noyes & a.,* 2 Mass. Rep. 578; Remarks of the court in giving opinion, (*Bell,* J.) *Fogg* v. *Clark,* 1 N. H. Rep. 165; *Smith* v. *Bell,* 6 Pet. 75–84.

On this point it is presumed there can be no difference of opinion. It is often a more difficult task to decide what the intention of the testator was. That is the point here. What was the intention of the testator?

This intention is to be gathered from the will, and from the whole will. *Bell,* J., *Fogg* v. *Clark,* 1 N. H. Rep. 164; *Parker,* C. J., *Hawley & a.* v. *Northampton,* 8 Mass. Rep. 36; *Cook & a.* v. *Holmes & ux.,* 11 Mass. Rep. 531; *Mann* v. *Mann & a.,* 14 Johns. 1.

What, then, does the will say? The first devise of land to Stephen C. Hall is in these words: " I also give to my eldest son, Stephen C. Hall, all that part of my homestead farm situated in Manchester, and all lots of land which lie southerly of Bridge street and westerly of Pleasant street, as laid down on a plan," &c.

This language is clear and precise. There is no ambiguity about it. The land is well described as that south of Bridge street and west of Pleasant street, on a certain plan, and there is such a plan, and there are such streets on the plan, and across the testator's farm; and there is a portion of the testator's farm south of Bridge and west of Pleasant street for the will to operate upon.

Is there anything beyond this expression or description to render doubtful the intention of the testator?

Immediately after the above description we find the words, " except lot numbered seventeen, above named." Now lot No. 17 does not lie within the bounds of the land

above described, as lying south of Bridge street and west of Pleasant street, but it lies south of Bridge and east of Pleasant street, and the question comes, what effect this exception can have upon the clear, precise, well expressed description above cited.

Here is the case of a description by fixed, known, and visible bounds, with an exception out of the land described, of a lot which did not exist in it.

Sound sense would seem to say in such a case that this exception only becomes idle and nugatory, and the description stands precisely as if the exception had not been made.

The exception did not touch the land described, and the testator was mistaken, perhaps, in its locality. If there are certain particulars sufficiently ascertained in a deed, which designate the thing intended to be granted, the addition of circumstances, false or mistaken, will not frustrate the grant. *Jackson* v. *Marsh,* 6 Conn. Rep. 281; *Jackson* v. *Clark,* 7 Johns. In this last case the deed described the premises, and as a part of the description inserted the words, " with the dwelling house thereon." There was no " dwelling" house thereon," but the court held that that circumstance could not control the rest of the description. If the addition of a thing to a description which does not exist upon the land cannot control the description, it is difficult to conceive how the exception of any matter out of the land, which does not exist upon it, can control the description. Jarman on Wills, 329.

As to conflicting descriptions in deeds, see *Benedict* v. *Gaylord,* 11 Conn. Rep. 332; *Hull* v. *Foster,* 7 Vt. Rep. 150; *Tyler* v. *Hammond,* 11 Pick. 183; *Ela* v. *Carr,* 2 N. H. Rep. 175; *Cutter* v. *Tufts,* 3 Pick. 172; *Loomis* v. *Jackson,* 19 Johns. 469; *Jackson* v. *Root,* 18 Johns. 60; *Howell* v. *Soule,* 5 Mason, 410; *Anon.* Lofft, 398; *Meyrick* v. *Meyrick,* 2 Tyr. 178; 2 C. and J., 223; *Lamb* v. *Reaston,* 5 Taunt. 207; 1 Marsh, 23. These are cases where the description was conflicting in the deeds; but the same doc-

trine is understood to be applicable to the description of land in wills.

There is a class of cases, where there is a particular description given of land in a deed or will; then follows a more general description, enlarging the land included in the particular description, and sometimes diminishing it. In such cases the particular description is to prevail; such are the cases of *Moor* v. *Magrath*, 1 Cowp. 9; *Tyler* v. *Hammond*, 11 Pick. 192; *Tenney* v. *Beard*, 5 N. H. Rep. 58; *Barnard* v. *Martin*, 5 N. H. Rep. 536; *Magoun* v. *Lapham*, 21 Pick. 135; *Whiting* v. *Dewey*, 15 Pick. 428; *Smith* v. *Strong*, 14 Pick. 128; *Howell* v. *Soule*, 5 Mason, 410; and many other cases. The doctrine is well settled.

Now the argument is this. In many of these cases, the quantity of land included in the general description was much larger than that included in the particular description, and if in these cases the general description could not avail to enlarge the more particular description, much less in this case can the "exception of a lot of land out of a particularly described tract avail to enlarge that particular tract."

In 7 T. R. 492, is found the case of *Skeratt* v. *Oakley*, very much in point. J. Skeratt by will bequeathed to his wife, besides some other legacies, a household estate at Northwood for her life, and a leasehold estate at Wrentnall to G. Walmsley and J. Gough. By a codicil to his will he directed that the bequests to his wife in his will should be in full of all claims she should be entitled to in his real and personal estate, *except the estate for the life of his wife in the premises at Wrentnall aforesaid.*

It was held that the wife was not entitled to the estates at Wrentnall.

Here was the exception of a life estate out of premises which by the will were not given to the wife, and it was held not to give her that estate.

In the case at the bar, there is an exception of lot No. 17 out of an estate not given to the claimant, and he claims by

virtue of that exception to have that estate. We contend no estate by implication can arise here, because an implication to support a devise has been defined to be such a strong probability, that an intention to the contrary cannot be supported. Jarman on Wills, 464, note 3. Legacies, by implication, are not to be supported, unless the intention of the testator is clear, so that no other reasonable inference can be made. If anything is clear in this case, it is the clear and precise language of the description of the land devised to Stephen C. Hall, to wit : " The land which lies southerly of Bridge street and westerly of Pleasant street." The terms of description are here plain and obvious.

Courts are not permitted to give to the will of a testator an effect contrary to the plain and obvious import of the terms used by him upon a mere conjecture as to his intention. *Manigault* v. *Deas*, 1 Boil. Eq. 298.

It may perhaps be contended that the language used in the devise, " of all the residue of the home farm," which the testator gives to his son, Henry C. Hall, shows that the testator intended the demandant should take as he claims.

But a closer inspection of the will and the accompanying plans shows this argument to be very weak, if it amounts to anything. Indeed, it overthrows the whole force of it. Because the whole force of such an argument rests on the phrase " all the residue of my home farm," and had the land thus devised to Henry C. Hall been the whole residue of the farm, in fact, there would be some strength in the suggestion.

But this devise to Henry C. Hall does not include " all the residue " of the farm, even if you give to the will the construction contended for by the demandant. There still remains a part of the farm undevised to any one, which cannot be included in any description ; to wit: the gore on the easterly side, between the highway and Bridge street.

This shows conclusively that in determining what all the residue which the testator intended to convey was, you

Hall *v.* Hall.

must take into account the language immediately follow-ing, to wit, "lying north of Bridge street, east by Pleasant street and the Amoskeag Company's land, south of said wood and wood and timber land." It was all the residue lying within these bounds, but not the residue of the whole farm, because a part of the residue, even allowing the de-mandant's construction to be correct, will remain undevised.

The words " all the residue " are general, and are restrict-ed by the particular description following.

But let us change this reasoning a little, and see if the argument drawn or attempted to be drawn from this expres-sion, " of all the residue," will not bear with equal force in enlarging the devise to the defendant.

By the will, John Hall gives to Stephen C. Hall all lots of land which lie southerly of Bridge street and westerly of Pleasant street.

Put upon this language its plain and unmistakable mean-ing, construe it to include the land in the southwesterly angle of these two streets, and nothing more; then take the devise " of all the residue of the home farm situate in Manches-ter," to Henry C. Hall, " lying north of Bridge street, east of Pleasant street and the Amoskeag Company's land, and west of the Elizabeth Jessup Hall land;" and apply to this language the construction which the demandant puts upon the language of the devise to him, and all the farm passes.

It is questionable whether a foot of it would remain unde-vised. Upon the strictest construction not more of it would remain undevised than if the construction contended for by the demandant were adopted.

But, as remarked before, the words " all the residue of my home farm," are words of general description. They are limited by a more particular description. *Tenney* v. *Beard,* 5 N. H. Rep. 58; *Barnard* v. *Martin,* 5 N. H. Rep. 536. And being so limited, they do not and cannot operate to give to the defendant all the farm not previously devised, whether the construction contended for by the demandant be

adopted or not. Hence the argument drawn from these words can be of no perceptible force.

The demandant contends that by the will he takes all those lots of land which lie southerly of Bridge street, and all those lots of land which lie westerly of Pleasant street.

Now to give to the will the meaning for which the demandant contends, you must insert into the language of the will, immediately before the word " westerly," these words, " all lots of land which lie." Now who is authorized to do any such thing? If the intention was clear and manifest, perhaps it might be done. But here we are trying to find out what the intention was, and until the intention be determined to require them, no one has authority to insert them. They cannot be inserted first, and then the intention determined by them.

In supplying words in a will, it is the most correct course to supply such only as it is evident the testator intended to use; and not such, also, as would be necessary to effectuate the supposed intention of the testator. *Lynch* v. *Hill*, 6 Munf. 114.

Words in a will should never be transposed where the words are plain and sensible; much less to let in different devizees or legatees in a will; for to do this would be to make a new will. 2 Leon. 165; 2 P. Wms. 384. A *fortiori*, words not to be inserted.

Here it is submitted the words are plain and sensible. Indeed, if any one had tried to find words to convey the land in the southwesterly angle formed by Bridge and Pleasant streets, he could hardly have selected more plain, neat and precise words than those used by the testator. One must study and exercise ingenuity to put upon them any other meaning than that contended for by the defendant.

Again, if the construction contended for by the demandant is adopted, the testator is made to devise a portion of the land given to the demandant twice over. First, he

gives the land south of Bridge street, that included the angle between Bridge and Pleasant streets. Then he gives him the land westerly of Pleasant street, and that gives him the same angle. Did the testator mean to patch one upon the other in that manner?

The same form of words is used both in the devise to Stephen C. Hall and Henry C. Hall.

If by the words, " southerly of Bridge street and westerly of Pleasant street," Stephen takes the whole land south of Bridge street, and the whole land west of Pleasant street, then by the words, " north of Bridge street and east of Pleasant street and the Amoskeag Company's land," Henry should take all the land north of Bridge street as far as the wood land, and all east of Pleasant street and the company's land to the Elizabeth Jessup Hall land.

Ordinarily words are to receive the same construction in every part of the instrument. *Morton*, J. *Elliot* v. *Carter*, 12 Pick, 442. " No principle would justify us in construing the same words differently in their application to different parcels of the estate." *Elliot* v. *Carter*, 12 Pick. 443. It may be urged that if the construction contended for by the demandant is not adopted, John Hall died intestate as to a portion of his estate. So he did, if that construction is adopted. A portion of his estate is undisposed of by the will; whichever construction is adopted, the argument fails. There is no language used in the will showing that he intended to convey the whole of his real estate. There is no recital of that kind. Whether there is more undisposed of in one case than the other can make no difference. Nor whether this son or that, or some other heir, takes more in one case than in the other.

A will is not to be controlled by an unmeritorious object, nor does the amount of property nor the want of prudence in its disposition afford a fair ground for controlling a will. *Thelluson* v. *Woodford*, 4 Ves. 313, 329, 340.

Perhaps it is a fair inference that by these various devises

between his nephew, niece and two sons, the testator in-tended to make such distinction between them as he saw fit, and to leave the law to operate on the balance. Perhaps a part of his estate was left intentionally undevised. But whether so, or not, we cannot make his will for him.

GILCHRIST, C. J. It is unnecessary, at this late period, to cite authorities for the purpose of showing that the intention of the testator, if it do not contravene any principle of law, is to be the guide of the court in the construction of a will, and the only question in this case is, what land did the tes-tator intend to devise to the demandant by the language he has made use of.

The testator devised to his grand-children, who were the children of Lycurgus Sherman, lot No. 17. This lot is in-cluded in the description of the tract of land which the de-mandant says is devised to him, but is excepted out of the operation of that devise.

The will gives to the demandant, Stephen C. Hall, "all that part of my homestead farm situate in said Manchester, and all lots of land which lie southerly of Bridge street and westerly of Pleasant street, except lot numbered 17, above named."

The will then gives to the tenant, Henry C. Hall, "all the residue of my home farm situate in said Manchester, and lying north of said Bridge street, east of said Pleasant street, and the Amoskeag Manufacturing Company's land," &c., and also the reversion of certain other land, &c.

Upon the tenant's construction, the land lying south of Bridge street and east of Pleasant street would be unde-vised, and also the land lying north of Bridge street and west of Pleasant street.

It is not at all probable that the testator intended to leave any portion of his property undisposed of by his will. And of two different constructions of a will, each of which should leave a certain portion of the estate undisposed of,

Hall v. Hall.

other things being equal, that construction would be preferred which would exempt the smallest quantity of the property from the operation of the will.    However, the words used by the testator are the means we are to use to ascertain his intention, and however they may be scattered, if they explain the intention, they are to be collected and put together, in order that the will may be carried into effect.    But whether the testator intended to die intestate as to any portion of his property, is a question not necessary now to be examined.

The clause devising the land to the demandant would be fairly susceptible of two constructions, if there were nothing to control it ; but the exception of lot No. 17 is a matter of most material importance.    If the testator did not intend to devise to the demandant the tract of which lot No. 17 forms a part, why did he make any allusion to this lot ?    Every word of a will is to have effect, if possible.    Nothing is clearer than that by excepting lot No. 17, out of the operation of this devise, the testator intended to give to the demandant that particular tract to which lot No. 17 belonged. He did not wish to devise that lot, because he had already given it to his grand-children, and as he had devised it in the clearest and most unambiguous language, it was not necessary to allude to it again, unless he at that time had in his mind the tract of which it was a part, and unless he meant to give that tract to the demandant.    The reference to lot No. 17 cannot be rejected from the will as surplusage. The allusion to it shows what he was thinking of, and clearly proves that if he did not at the time think that he was giving this tract to the demandant, any mention of lot No. 17 would be idle and unnecessary.    No other reason can be assigned for it, and that seems to us perfectly satisfactory.    We do not know that any reasoning can make the point plainer than this simple statement of it, and if this do not show the testator's intention, the only remaining course would be to reject the reference to lot No. 17 and give no

effect to it.   But the law requires us to give effect to every word in a will, if possible, and by rejecting this reference we do not expound the testator's intention, but we make a new will for him.

The opinion of the court is that the testator intended to give to the demandant all the lots lying southerly of Bridge street, and the meaning which the testator attached to the words, "southerly of Bridge street," is shown by his reference to lot No. 17, which is one of the lots lying southerly of Bridge street.   This shows that he meant to give the demandant all the lots that were southerly of Bridge street, and shows what he meant by that expression.   He has also used the same form of words in relation to Pleasant street. He gives the demandant all lots of land lying "westerly of Pleasant street."   Now as he has used the same form of expression in relation to Pleasant street that he has used in relation to Bridge street, and as we have an exposition of his intention in reference to Bridge street, he must be considered as having the same intention in reference to Pleasant street.   He has given the demandant "all lots of land lying southerly of Bridge street and westerly of Pleasant street."   In order to accomplish the testator's intention, it is not necessary that the land should be both southerly of Bridge street and westerly of Pleasant street.   The descriptive words are to be taken distributively.   They mean that the demandant should have all lots of land which lie southerly of Bridge street, and also all lots of land which lie westerly of Pleasant street.   This appears to us to be a fair construction of the will, as it gives the same effect to the same forms of expression.   As we think, this is the meaning of the will, by giving this effect to the descriptive words, and applying them to the land as marked upon the plan, they will be found to include the tract which the demandant contends was devised to him.

*Judgment for the demandant.*